THE PEOPLE OF THE STATE OF NEW YORK ex rel. TYRONE LITTLE, Also Known as TYRONE WILLIAMS, Relator, *v.* JAMES MONROE, as Warden of Brooklyn House of Detention, Respondent.

Second Department, March 31, 1972.

*Robert Kasanof* (*Stewart Altman* of counsel), for relator.

*Louis J. Lefkowitz, Attorney-General* (*Vincent A. Marsicano* of counsel), for respondent.

HOPKINS, Acting P. J. The relator in this habeas corpus proceeding, Tyrone Little, was convicted of manslaughter in the second degree and on September 1, 1965 was sentenced therefor to a prison term of 5 to 7½ years. He was first paroled on October 20, 1969 and was declared delinquent on May 8, 1970 and returned to prison. He was again paroled on July 20, 1971.

He was then arrested on January 21, 1972 on a series of charges. As a result of the arrest, a parole detainer warrant was lodged against him. On March 10, 1972 the Criminal Term directed that he be released on his own recognizance, since no indictment had been found against him after more than 45 days had elapsed from the time of his arrest (CPL 190.80). The Special Term has denied his application for a writ of habeas corpus and he has been denied bail. The writ in the instant proceeding was issued by a Justice of this court. The relator's claim to us is that he is entitled to bail or to release on his own recognizance with respect to the parole detainer warrant.

We are of the opinion that the relator is not entitled either to bail or to release; and we dismiss the petition and the writ.

The CPL has carefully delineated the right to bail. "When a principal, whose future court attendance at a criminal action or proceeding is or may be required, initially comes under the control of a court, such court must, by a securing order, either release him in his own recognizance, fix bail or commit him to the custody of the sheriff" (CPL 510.10). The terms under which bail shall be granted are clearly stated in the statute (see CPL 510.20, 530.10, 530.40). The question raised by the above-quoted portion of CPL 510.10 is whether a parole revocation

proceeding is a " criminal action or proceeding " contemplated by the statute.

A " criminal action " is said to commence with the filing of an accusatory instrument against a defendant in a criminal court (CPL 1.20, subd. 16). An accusatory instrument means an indictment, information or complaint (CPL 1.20, subd. 1). Under a broad construction, an accusatory instrument might be equated with the warrant issued by the board of parole (cf. Correction Law, §§ 212, subd. 7 [formerly § 805], 829, 216, 283; cf. L. 1970, ch. 476). The point is, however, that the warrant is not an accusatory instrument filed in a criminal court. It is an instrument issued by, and filed with, the board of parole.

A " criminal proceeding ", also mentioned in CPL 510.10, is any proceeding which is a part of a criminal action or which occurs in a criminal court related to a prospective, pending or completed criminal action (CPL 1.20, subd. 18). Though the parole revocation proceeding relates to a completed criminal action, it does not occur in a criminal court (cf. CPL 10.10).

Even beyond the intent of the statute, the granting of bail in a parole revocation proceeding would create insuperable problems. The court granting bail is not in control of the proceeding — that is within the power of the board of parole. It is the province of the board to determine when the hearing shall be held. If the person accused of delinquency did not appear at the hearing, after notice, there is no procedure whereby bail would be revoked and the person restored to the custody of the board. Even to improvise a procedure by court rule or decision would be difficult, if attainable.

The relator notes that in *People ex rel. Menechino* v. *Warden* (27 N Y 2d 376, 383) there is language which indicates that the action surrounding a parole revocation is a proceeding. But *Menechino* did not hold that it was a " criminal proceeding "; the opinion speaks in general terms of all kinds of proceedings, whether civil, criminal or administrative. Nor did *Menechino* deal with the then recent decision of the Court of Appeals which held that the issuance of a parole revocation warrant, for certain purposes at least, did not constitute the beginning of a judicial proceeding (*People* v. *Simons*, 22 N Y 2d 533).

The relator also draws our attention to the provisions of the statute which allow bail to parole violators of a sister State (CPL 570.32, 570.38). However, those provisions expressly contemplate a process whereby the accused parolee is brought before a criminal court on a warrant issued by that court, so that

all future proceedings concerning the parolee lie wholly within the power of the court (cf. CPL 570.10, 570.24).

The relator contends that equal protection dictates that his rights, as an accused parole violator within the State, should be the same as the rights extended to an out-of-State parolee. We are not persuaded that the difference in treatment breaches any constitutional mandate (cf. *People ex rel. Weiss* v. *Nenna,* 25 A D 2d 399, affd. 22 N Y 2d 709; *Keller* v. *Butler,* 246 N. Y. 249; *People ex rel. Swanson* v. *Fitzsimmons,* 2 A D 2d 235). At the very least, in considering the difference, New York may place the conviction, sentence and conditions of parole in its own courts and penal institutions beyond any preliminary test of validity, such as might be directed against an out-of-State conviction and sentence.

We are told by the Attorney-General that the relator is now in State prison awaiting a hearing. In any event, the relator and others similarly situated are not without remedy, for they can apply for an immediate hearing.

The petition and the writ should be dismissed, without costs.

MARTUSCELLO, LATHAM, SHAPIRO and GULOTTA, JJ., concur.

In a habeas corpus proceeding, petition and writ dismissed, without costs.